[Civ. No. 4182. First Appellate District, Division One.—July 26, 1922.]

ANGLO-CALIFORNIA TRUST COMPANY (a Corporation), Respondent, v. GEORGE J. WALLACE et al., Appellants.

[1] Promissory Notes—Acceptance Before Maturity—Defenses—Evidence.—In this action to recover on promissory notes accepted before maturity for a valuable consideration and without notice of the alleged defenses, the evidence fails to disclose facts which altered and changed the position of plaintiff as holder of the notes in due course to that of a holder after maturity.

[2] Novation—Essential.—One relying upon a novation must establish that the new obligation was intended as a substitution and extinguishment of the old one.

[3] Id.—Debt Evidenced by Promissory Note—New Note.—Before a promissory note extinguishes and satisfies the indebtedness evidenced by an earlier one, there must be an express agreement or understanding to that effect.

[4] Id.—Renewal of Note—Effect of.—A promissory note given in renewal of an existing note only postpones the time of payment of the latter until default is made in the payment of the new note.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Frank H. Dunne, Judge. Affirmed.

The facts are stated in the opinion of the court.

Wm. J. Hayes for Appellants.

F. A. Denicke and H. S. Young for Respondent.

TYLER, P. J.—This was an action brought to recover judgment upon certain promissory notes executed by the defendants, who were doing business under the firm name

4. Renewal note as discharging original note, note, Ann. Cas. 1915A, 1084, 1094.

Effect of renewal of principal's obligation to release party to a note executed to the creditor as collateral, note, 23 L. R. A. (N. S.) 141.

and style of George J. Wallace & Company. The notes were four in number and were in the principal sum of five hundred dollars each, and were made payable to their codefendant, Emma B. Freeman. They were all executed on August 29, 1919, and matured thereafter in two, three, four, and five months, respectively. On the twentieth day of October, 1919, and prior to maturity thereof, they were indorsed by the payee to respondent, Anglo-California Trust Company. The first two notes having become due and not having been paid, suit was filed thereon on December 12, 1919, and thereafter on March 1, 1920, and after their maturity another suit was instituted on the two remaining notes. Defendants by answer set up certain defenses, including fraud and rescission. The actions were consolidated, the parties and questions being identical. At the trial and before the submission of the cases, the defendants other than Emma B. Freeman duly moved the court for permission to file certain answers supplementary and to reopen the cases for further testimony. These motions were denied for the reason, as found by the court, that plaintiff accepted the notes before maturity for a valuable consideration and without notice of the alleged defenses attempted to be set up in the proposed amended pleading. It is the contention of appellants that this finding is not supported by the evidence. Defendant Emma B. Freeman has not appealed. It is admitted that the notes were indorsed by the payee and transferred to respondent before maturity. It is also admitted that at the time of the indorsement Emma B. Freeman was a customer of respondent and was indebted to it, and that she received additional accommodation in the nature of advances on the strength of the notes so indorsed, and that they were held by respondent as security for the payment of this indebtedness. It is further conceded that there is nothing in the evidence to show that prior to the transfer the Trust Company had any knowledge of the alleged defenses of appellants.

Notwithstanding these admissions, it is urged that the evidence disclosed certain facts which altered and changed the position of respondent as holder of the notes in due course to that of holder after maturity, and that such facts

had the effect of opening the door for the defenses alleged in appellants' answer, and their proposed amendments.

For a full understanding of the question a brief summary of the transactions of the parties becomes necessary. On August 22, 1919, the defendant, Emma B. Freeman, occupied a certain store and conducted a business therein, known as Freeman Art Company. She held the premises under a lease for the term of five years. The lease contained restrictions against assignment or subletting without the written consent of the lessor, and provided for forfeiture in the event of a breach of either of these conditions.

On August 22, 1919, pursuant to representations on the part of Mrs. Freeman that she had a right to sell her lease, appellants agreed to purchase the same for the sum of five thousand dollars. Thereafter Mrs. Freeman informed them that she was having difficulty in obtaining the consent of her landlord to a transfer of the lease. She subsequently, however, presented to Wallace & Company what purported to be an assignment thereof. Wallace & Company, believing the instrument to be satisfactory, completed their agreement. The notes sued on, which constituted a part of the consideration for the sale, were executed and delivered, and Wallace & Company then went into occupation of the premises. Shortly thereafter the owner demanded possession thereof on the ground that the covenant against assignment had been violated, and a suit in unlawful detainer was instituted by him against the purchasers. Four months thereafter Wallace & Company moved to other premises. It is claimed by appellants that at this time a rescission of all contractual relations between Mrs. Freeman and appellants took place, and that appellants abandoned the premises and surrendered the same to Mrs. Freeman, and that she thereupon went into full possession thereof and resumed the conduct of the business she had theretofore carried on prior to the sale, and subsequently incorporated the business under the name of the Freeman Art Company, and that its assets were transferred by her to this corporation, which in turn assumed all of her liabilities.

This corporation executed and delivered to respondent bank its promissory note in the sum of three thousand dollars in payment of the indebtedness to it of Emma Free-

man, a guaranty of payment being indorsed thereon by her.

[1] It is the claim of appellants that respondent bank having assented to this transaction and accepted the corporate note, that Emma B. Freeman's indebtedness to the bank was thereby novated, and the bank merely held the notes here sued on as collateral to the corporate note, and as the transaction took place after their maturity, appellants' defenses are material and competent. We see no merit in this contention.

[2] One relying upon a novation must establish that the new obligation was intended as a substitution and extinguishment of the old one. Here the only evidence that in any manner indicated a novation was the execution of the note by the corporation and its acceptance by the bank. [3] The rule is well established in this state that before a note extinguishes and satisfies the indebtedness evidenced by an earlier one, that there must be an express agreement or understanding to that effect. It is not contended that there was any express agreement upon the subject, and whatever presumption, if any, which might arise from the transaction itself, is disspelled by the testimony of the teller of the bank, which shows there was no such agreement, but, on the contrary, that the corporate note was simply a renewal of the original indebtedness. (*Comptoir D'Escompte de Paris* v. *Dresbach,* 78 Cal. 15 [20 Pac. 28]; *Savings & Loan Society* v. *Burnett,* 106 Cal. 514 [39 Pac. 922]; *Bonestell* v. *Bowie,* 128 Cal. 511 [61 Pac. 78]; *Gnarini* v. *Swiss-American Bank,* 162 Cal. 181 [121 Pac. 726].) [4] In such a case the note only postpones the time of payment of the old note until default is made in the payment of the new note. (*Clark* v. *Berlin Realty Co.,* 33 Cal. App. 50 [164 Pac. 333].) Nor is the collateral security pledged for the payment of the original debt released by the taking of such new note. (8 Corpus Juris, p. 442.)

Counsel for appellants argues that the doctrine announced in the Gnarini case has no application to the instant one, for the reason that Emma B. Freeman guaranteed payment of the corporation note. We fail to see how this fact in any manner affects the doctrine there announced. The note executed by the Freeman Art Company was for the same debt, and was manifestly executed simply

to meet the changed conditions brought about by the incorporation of the business. The rights of the bank became fixed at the time it took the notes, and they were in no manner affected by the subsequent transaction, which merely amounted to a renewal of the original obligation. Appellants' further contention that assuming that a novation never took place, nevertheless Mrs. Freeman's liability to the bank was suspended so long as the corporate note was not dishonored by nonpayment. Assuming this to be so, a pledgee of commercial paper takes it as a trustee for the owner and pledgor, and the suspensive condition as to payment could in no manner affect the bank's right to seek to recover upon a matured promissory note deposited as security for this debt, and to hold the proceeds if and when recovered in satisfaction of the principal debt secured by it. (2 Randolph on Commercial Paper, sec. 795.)

For the reasons given the judgment is affirmed.

Richards, J., concurred.