**JOHNSON BROTHERS CORPORATION,**
Respondent,

v.

**RAPIDAN REDEVELOPMENT LIMITED PARTNERSHIP, et al., County of Blue Earth, Allis-Chalmers Corporation, et al., Respondents,**

**American Insurance Company, Defendant,**

**Rapidan Redevelopment Limited Partnership, et al., counterclaimants and cross claimants, Respondents,**

**Johnson Brothers Corporation, counterclaim defendant, Respondent,**

**Northbrook Excess and Surplus Insurance Company, et al., counterclaim defendants, Appellants,**

and

**Allis-Chalmers Corporation, et al., cross claim defendants, Respondents,**

**Employer's Insurance of Wausau, Fireman's Fund Insurance Company, third party defendants, Respondents.**

No. C7-87-2254.

Court of Appeals of Minnesota.

May 24, 1988.

Jeffrey L. Sikkema, Dorsey & Whitney, Minneapolis, for Johnson Bros. Corp.

John B. Massopust, Scott G. Johnson, Robins, Zelle, Larson & Kaplan, Minneapolis, for Rapidan Redevelopment Limited Partnership, et al.

David J. Twa, Co. Atty., Mankato, for Blue Earth County.

Robert W. Murnane, Michael P. Tierney, Murnane, Conlin, White, Brandt & Hoffman, St. Paul, for Allis-Chalmers Corporation, et al.

R. Lawrence Purdy, Purdy & Ashley, P.A., Minneapolis, Charles R. Tuffley, Susan Tukel, Denenberg, Tuffley, Bocan, Jamieson, Black, Hopkins & Ewald, P.C., Southfield, Mich., for Northbrook Excess and Surplus Insurance Company, et al.

John M. Sheran, Mankato, for Employer's Insurance of Wausau.

Michael Simpson, Golden Valley, for Fireman's Fund Ins. Co.

Heard, considered and decided by SCHUMACHER, P.J., and FOLEY and FORSBERG, JJ.

## OPINION

FORSBERG, Judge.

This appeal is from a grant of partial summary judgment to respondents Rapidan Redevelopment Limited Partnership and Actaeon Corporation ("Rapidan/Actaeon") against appellants Northbrook Excess and Surplus Insurance Company and Transport Indemnity Company ("NESCO/Transport"). Rapidan/Actaeon, the owners of a hydroelectric generating station, purchased force majeure insurance policies from NESCO/Transport after entering into construction contracts for the refurbishment of the station. The only other parties involved in this appeal are respondent Johnson Brothers Corporation ("JBC"), the general contractor on the

project, and respondent Allis-Chalmers Corporation ("Allis-Chalmers"),[1] a subcontractor responsible for providing turbines for the project. We affirm the trial court's grant of partial summary judgment to Rapidan/Actaeon.

## FACTS

In March 1983, Rapidan/Actaeon and JBC entered into a construction agreement for the refurbishment of the generating station. That contract required substantial completion on or before May 20, 1984. For each day that substantial completion was delayed, JBC was to pay Rapidan/Actaeon liquidated damages in the amount of $2,000 per day. JBC was not liable for delay caused by force majeure, which was defined by the agreement as any condition or occurrence "not within the reasonable control" of the party claiming its existence, including but not limited to "floods, storms, strikes, * * * acts of God, unavailability of materials, delays of common carriers, * * * failure of equipment, explosions, failure in obtaining permits, [and] delays by the Owner."

To cover these exceptions, Rapidan/Actaeon purchased force majeure insurance policies from NESCO/Transport, with each insurer providing 50 percent of the total coverage. The policies require NESCO/Transport to indemnify Rapidan/Actaeon in the amount of $2,000 per day for force majeure delays, which are defined in the same manner as in the agreement with JBC. The policies provide for different deductibles: if no party is at fault, the deductible is $100,000; if the contractor (JBC) or the turbine manufacturer (Allis-Chalmers) is liable for a delay, the deductible equals the amount of that party's respective liability.

In July 1985, JBC sued a number of parties, including Rapidan/Actaeon (to recover certain progress payments allegedly due under the agreement) and Allis-Chalmers (for breach of the subcontract). Rapidan/Actaeon thereafter sued JBC for breach of the agreement, NESCO/Transport for payment under the force majeure policies, and Allis-Chalmers for damages as a result of alleged delays in delivery of equipment.

Rapidan/Actaeon filed proofs of loss with NESCO/Transport for 187 days of force majeure delays. At some point, NESCO/Transport paid Rapidan/Actaeon $124,000, calculated as follows: $374,000 (187 days of delay at $2,000 per day) minus a $250,000 deductible (representing the assumed liability of Allis-Chalmers).

In April 1987, Rapidan/Actaeon moved for partial summary judgment against NESCO/Transport, asserting that a $100,000 deductible should have been applied to this payment instead of $250,000. The trial court found that there was no just reason for delay, and judgment was entered against NESCO/Transport in the amount of $150,000. The trial court subsequently dismissed a motion by NESCO/Transport for rehearing. This appeal followed.

## ISSUE

Did the trial court err in granting summary judgment?

## ANALYSIS

■ 1. The first issue in this case involves the cause of a portion of the 187-day delay. In the memorandum attached to its order dismissing NESCO/Transport's motion for rehearing, the trial court stated:

[D]eposition evidence shows that a total of 187 days of force majeure delay was incurred of which 127 days was by reason of the labor strike and the balance of delay was for other reasons.

On appeal, NESCO/Transport contend that in this statement the trial court acknowledges that the cause of the remaining 60-day delay has not been determined. NESCO/Transport therefore argue that an issue of fact exists as to the nature of the delays incurred during this 60-day period

1. Although Allis-Chalmers is now known as Voith Hydro, Inc., it will be referred to as Allis- Chalmers in this opinion.

and that the court erred in granting partial summary judgment.

NESCO/Transport claim that the additional 60 days of delay were caused by failure of the seals in the Allis-Chalmers turbine generators.[2] If Allis-Chalmers was at fault for such a delay, NESCO/Transport might be entitled to a higher deductible represented by Allis-Chalmers' liability. However, NESCO/Transport submitted no evidence in support of their claim.

More importantly, NESCO/Transport failed to challenge the evidence submitted by Rapidan/Actaeon in support of its motion for partial summary judgment. That evidence included a letter dated September 13, 1984 from JBC to Rapidan/Actaeon in which JBC outlined the specific reasons they were requesting a 187–day force majeure extension of the project's substantial completion date. This letter[3] indicates that the entire 187–day delay was caused by strikes, high water problems, and severe weather conditions; there is no suggestion that any portion of the delay was caused by failure of the Allis-Chalmers seals.

> Minn. R.Civ.P. 56.05 provides in part:
>
> When a motion for summary judgment is made and supported as provided by Rule 56, an adverse party may not rest upon the mere averments or denials of his pleading but must present specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Given NESCO/Transport's failure to properly challenge the letter explaining the causes of the 187–day delay, we conclude that there is no genuine issue of fact on this issue.[4] NESCO/Transport cannot rely upon mere allegations that the 60–day delay is due to a defect in Allis-Chalmers' equipment.

■ 2. The second issue in this case involves the amount of the deductible to be applied to Rapidan/Actaeon's claim under the force majeure policies. The construction and interpretation of contracts and insurance policies are questions of law for the court to decide. *Hunt v. IBM Mid America Employees Federal Credit Union*, 384 N.W.2d 853, 856 (Minn. 1986); *Iowa Kemper Insurance Co. v. Stone*, 269 N.W.2d 885, 886–87 (Minn. 1978).

Both policies provide for the following deductibles: if no party is at fault, the deductible is $100,000; if JBC or Allis-Chalmers is liable for a delay, the deductible equals the amount of that party's respective liability. Under the terms of the construction agreement between Rapidan/Actaeon and JBC, it is undisputed that JBC is not liable for force majeure delays. In order to ascertain Allis-Chalmers' liability for such delays, the contract between it and JBC must be examined. That contract consists of three documents: the specifications drawn by Rapidan/Actaeon, Allis-Chalmers' proposal, and the subcontract agreement. The subcontract, which is the latest in time, mandates that its provisions control in the event of a conflict between these three documents.

The subcontract states that Allis-Chalmers shall pay liquidated damages not to exceed $250,000 in the event of late delivery. In contrast, the specifications and proposal both contain force majeure type provisions excluding liability if the defaults or delays are due to force majeure type causes which are beyond the control and without fault of Allis-Chalmers.

2. A dispute does exist as to whether substantial completion has been achieved and whether Allis-Chalmers is responsible for further delays *beyond* this 187–day period. Resolution of these issues, however, is not genuine to this appeal, which only involves the 187–day delay period.

3. This letter was part of the trial court file, having been submitted as an exhibit attached to JBC's answers to interrogatories from NESCO/Transport. In connection with this motion for partial summary judgment, Rapidan/Actaeon referred to the letter in its memorandum in opposition to the NESCO/Transport's motion for rehearing.

4. Although the trial court cited deposition testimony which had been submitted by Rapidan/Actaeon in support of its grant of partial summary judgment, we find the September 1984 letter to be more convincing evidence as to the causes of the 187–day delay.

The general rule is that a contract must be construed as a whole and its terms should be read together and harmonized where possible. *Country Club Oil Co. v. Lee*, 239 Minn. 148, 151–52, 58 N.W.2d 247, 249 (1953); *Burgi v. Eckes*, 354 N.W.2d 514, 518 (Minn. Ct.App.1984). Thus, absent a clear conflict between provisions, a court should not strive to find one. In rejecting NESCO/Transport's argument that the three documents conflict, the trial court stated:

> The carriers argue that because the [subcontract] controls over any conflicts between or among the three documents, and there is conflict here because of the absence of a relief clause [in the subcontract], that the liquidated damages provision in the [subcontract] applies, absolutely, and obligates [Allis-Chalmers] to pay [Rapidan/Actaeon] $250,000.00. [Rapidan/Actaeon] and Allis-Chalmers argue that there is no conflict between the provisions, that all of the provisions of the three document[s] * * * should be interpreted so as to give full effect to all provisions, if at all possible. This is the usual standard to be applied in the interpretation of any written matter, statutes and documents alike. The specifications were produced by [Rapidan/Actaeon] and contain, as has been said, liquidated damages and relief therefrom. The proposal was produced by [Allis-Chalmers] which also contained liquidated damages provision and one for relief. It is clear that both parties believe that the application of the liquidated damages provision should not be absolute.

We agree with the trial court; there is no conflict between the provisions of these three documents.

## DECISION

The trial court's grant of partial summary judgment to Rapidan/Actaeon against NESCO/Transport is affirmed.